GMP:NDB
F. #2019R00868

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | <u>C O M P L A I N T</u> |
| - against - | (21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(vi)) |
| THOMAS PITTS, | 19-M-953 |
| Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

KATHERINE KEARNEY, being duly sworn, deposes and states that she is a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations, duly appointed according to law and acting as such.

On or about and between May 16, 2019 and October 16, 2019, within the Eastern District of New York and elsewhere, the defendant THOMAS PITTS, together with others, did knowingly and intentionally distribute and possess with intent to distribute a controlled substance, which offense involved 400 grams or more of a substance containing N-phenyl-N-[1-( 2-phenylethyl )-4-piperidinyl] propanamide ("fentanyl"), a Schedule II controlled substance.

(Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(A)(vi))

The source of your deponent's information and the grounds for her belief are as follows:[1]

1. I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations ("HSI") and have been involved in the investigation of numerous cases involving narcotics trafficking. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including the defendant's criminal history record; and from reports of other law enforcement officers involved in the investigation.

2. On or about May 16, 2019, an undercover officer (the "UC") purporting to be an individual seeking to purchase heroin contacted an associate of PITTS and ordered 25 grams of heroin from him. Later that day, the UC and PITTS's associate coordinated a meeting and met at an agreed-upon location and time. At that meeting, PITTS was seated in the driver's seat of a parked vehicle. His associate, who appeared to be unconscious, was seated next to him. PITTS provided the UC with approximately 25.2 grams of a substance containing a mixture of heroin and fentanyl. At that transaction, PITTS provided his telephone number to the UC and told the UC to contact him (PITTS) for future drug purchases. PITTS also stated, in sum and substance and in part, that he did not need to contact another supplier to sell heroin to the UC. This meeting, and all of the meetings described below between the UC and PITTS were recorded. As set forth below,

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

since May 16, 2019, the UC has made controlled purchases of a substance containing more than 400 grams of fentanyl from PITTS.

3. On or about May 23, 2019, the UC called PITTS and ordered 30 grams of heroin from him. Later that day, PITTS and the UC met after agreeing on a location and time. At that meeting, PITTS provided the UC approximately 30.2 grams of a substance containing a mixture of heroin and fentanyl.

4. On or about June 6, 2019, the UC called PITTS and ordered 30 grams of heroin from him. Later that day, PITTS and the UC met after agreeing on a location and time. At that meeting, PITTS provided the UC approximately 27.7 grams of a substance containing a mixture of heroin and fentanyl. At that transaction, PITTS told the UC, in sum and substance and in part, that he believed the bag of heroin was a few grams short of the agreed-upon 30 grams and provided the UC with two oxycodone pills to compensate for this shortfall. At that meeting, PITTS also stated, in sum and substance and in part, that he would look into whether he could obtain a firearm to sell to the UC after the UC stated that s/he (the UC) wanted a firearm for protection because the UC is involved in narcotics transactions with other people who display firearms when they meet.

5. On or about June 12, 2019, PITTS called the UC and offered to sell the UC a .380 Automatic Colt Pistol for $650. PITTS told the UC, in sum and substance and in part, that he (PITTS) knows someone who will bring the firearm into New York from out of state. The UC agreed to purchase the firearm, which PITTS told the UC he (PITTS) could get the week of June 17, 2019.

6. On or about June 19, 2019, the UC called PITTS and ordered 30 grams of heroin from him. Later that day, PITTS and the UC met after agreeing on a location and

time.  At that meeting, PITTS provided the UC approximately 29.9 grams of a substance containing fentanyl.

7. On or about June 21, 2019, PITTS called the UC and told the UC that he (PITTS) had "that thang" for the UC, which the UC understood, based on his/her prior conversations with PITTS, referred to a firearm.  Later that day, PITTS and the UC met after agreeing on a location and time.  At that meeting, PITTS provided the UC with a Ruger P95DC semiautomatic pistol bearing serial number 21357825, in exchange for $650.

8. On or about July 5, 2019, the UC called PITTS and ordered 80 grams of heroin from him.  Later that day, PITTS and the UC met after agreeing on a location and time.  At that meeting, PITTS provided the UC approximately 80.7 grams of a substance containing a mixture of heroin and fentanyl.

9. On or about July 25, 2019, the UC called PITTS and ordered 15 grams of heroin from him.  Later that day, PITTS and the UC met after agreeing on a location and time.  At that meeting, PITTS provided the UC approximately 14.9 grams of a substance containing fentanyl.

10. On or about August 12, 2019, the UC called PITTS and placed an order for 60 grams of heroin from him.  On or about August 14, 2019, PITTS and the UC met after agreeing on a location and time.  At that meeting, PITTS provided the UC approximately 60.9 grams of a substance containing fentanyl.

11. On or about September 14, 2019, the UC called PITTS and ordered 60 grams of heroin from him.  Later that day, PITTS and the UC met after agreeing on a location and time.  At that meeting, PITTS provided the UC approximately 59.1 grams of a substance containing fentanyl.

12. On or about September 30, 2019, the UC called PITTS and ordered 80 grams of heroin from him. The following day, on or about October 1, 2019, PITTS and the UC met after agreeing on a location and time. At that meeting, PITTS provided the UC one bag containing approximately 60 grams of a substance containing a mixture of fentanyl and heroin, and one bag containing approximately 20 grams of a substance containing fentanyl. During that meeting, PITTS also stated, in sum and substance and in part, that he would try to obtain a kilogram of heroin for the UC for their next transaction.

13. On or about October 16, 2019, the UC and PITTS exchanged text messages coordinating their transaction. After PITTS confirmed to the UC that he (PITTS) had the kilogram they had previously discussed, PITTS drove to a location in Queens, New York, where he had agreed to meet the UC. After PITTS parked the car, he retrieved a red bag from the car's trunk. PITTS was then placed under arrest. Agents recovered what appears to be approximately one kilogram of a substance containing heroin and/or fentanyl.[2]

14. Law enforcement officers read the defendant THOMAS PITTS his Miranda rights, and PITTS agreed to waive them and speak to agents without an attorney present. PITTS stated, in sum and substance and in part, that, immediately before he was arrested, he had planned on selling the UC a kilogram of heroin in exchange for $72,000.

---

[2] Due to fentanyl's inherent danger, agents did not field-test the substance to determine its chemical composition. Chemical testing will be performed in the laboratory.

WHEREFORE, your deponent respectfully requests that the defendant THOMAS PITTS, be dealt with according to law.

S/ Katherine Kearney
KATHERINE KEARNEY
Special Agent, United States Department of Homeland Security, Homeland Security Investigations

Sworn to before me this
17th day of October, 2019

S/ Steven Tiscione
THE HONORABLE STEVEN L. TISCIONE
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK