**Federal Defenders**
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David Patton
*Executive Director and Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

December 20, 2021

**VIA ECF**

Hon. LaShann DeArcy Hall
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

RE: **United States v. Thomas Pitts, 19 CR 502 (LDH)**

Dear Judge DeArcy Hall:

  We write on behalf of defendant Thomas Pitts to renew our request for an adjournment of trial, which is scheduled for January 10, 2021. We make this motion for two reasons: (1) to avoid the wave of COVID-19 infections caused by the emerging Omicron variant, and (2) to seek resolution of Mr. Pitts's sentencing exposure, a material question to his decision whether to proceed to trial or plead guilty. The government takes no position on this adjournment request

### 1. An adjournment should be granted in light of the Omicron variant's spread.

  We respectfully request that trial, which is scheduled to begin in three weeks, be adjourned until the current spike of COVID-19 infections has passed. As the Court is likely already aware, the Omicron variant has caused a serious rise in the infection rate in New York. Yesterday, the State reported 22,478 new cases, 5,731 of which were in the City, which represents one of the highest single-day records since March 2020. Adeel Hassan & Emma G. Fitzsimmons, *New York City Mayor Says City Needs To Move Faster To Fight Omicrom Threat*, N.Y. Times (Dec. 20, 2021), *available at* https://www.nytimes.com/live/2021/12/20/world/omicron-covid-vaccine-tests/new-york-city-mayor-says-city-needs-to-move-faster-to-fight-omicron-threat. This substantial uptick in the rate of infection state- and citywide is likely to persist for the next several weeks, leading up to and potentially continuing through the trial date. *Id.*; *see also* Rob Stein, *Omicron Could Bring the Worst Surge of COVID Yet in the U.S.—and Fast*, NPR (Dec. 17, 2021) (discussing how modeling predicts peak of Omicron variant's spread to be mid-January), *available at* https://www.npr.org/sections/health-shots/2021/12/17/1065083105/u-s-omicron-wave-could-be-the-worst-yet-projections-find-and-its-coming-fast.

  Although the Court has taken steps to prevent the spread of COVID-19 during trial, such as requiring masks be worn and social distancing be maintained, the Omicron variant appears to be unusually contagious, even among people who have been fully vaccinated or were previously

*United States v. Pitts*, No. 19-cr-502 (LDH)
December 20, 2021

infected by the virus. *See* Charles Schmidt, *Why Is Omicron So Contagious*, Scientific American (Dec. 17, 2021), *available at* https://www.scientificamerican.com/article/why-is-omicron-so-contagious. And although preliminary data suggest that the Omicron variant tends to cause milder forms of the illness, an infected person still must isolate, and quarantine rules apply to people who have been in close contact with him or her. *See* CDC, *Quarantine and Isolation* (Dec. 9, 2021), https://tinyurl.com/2uf5necr.

    We are concerned that proceeding to trial in the midst of this unusually contagious COVID-19 wave will expose the Court, its staff, the parties, witnesses, and jurors to potential infection. Even more, we are concerned that any such infection will disrupt or delay the trial proceedings while people isolate or quarantine after a close exposure. Finally, we are personally concerned about our potential vulnerability to the Omicron variant while preparing for trial with Mr. Pitts at the MDC, where, as this Court is aware, the risk of COVID-19 infection has been greater than in the surrounding community. BOP facilities are already starting to show spikes in infection rate over the last few days, including 69 new cases at FPC Alderson and 40 new cases at USP Allenwood. *See* https://www.bop.gov/coronavirus/ (Dec. 20, 2021). MDC Brooklyn reported its first new inmate case today, after nearly two months of no new cases among detainees. *Id.*

    In short, we respectfully request an adjournment of trial until the current surge in COVID-19 cases due to the Omicron variant has passed. We believe this adjournment is in the best interests of personal and public health and safety, as well as judicial economy.

### 2. An adjournment should be granted to resolve Mr. Pitts's statutory sentencing exposure.

    We also make this request for an adjournment to resolve Mr. Pitts's statutory sentencing exposure — in particular, whether he is subject to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), on Count Four of the indictment, which charges him with possessing a firearm after being convicted of a felony, in violation of 18 U.S.C. § 922(g). This issue is material — indeed, essential — to Mr. Pitts's decision whether to proceed to trial, and is one that the Court would have to inform him of before accepting a guilty plea on that count. *See* Fed. R. Crim. P. 11(b)(1)(H)-(I); *United States v. Rodriguez*, 553 U.S. 377, 384 (2008)

    To explain the materiality of this issue, some background is required. In addition to the felon-in-possession count, the indictment charges Mr. Pitts with: Count One, conspiring to possess with the intent to distribute heroin and fentanyl; Count Two, possessing those drugs with the intent to distribute; and, Count Three, possessing or using a firearm in connection with those drug offenses, in violation of 18 U.S.C. § 924(c). Counts One and Two carry a ten-year minimum; Count Three carries a five-year minimum that must run consecutively to any other offense. If Mr. Pitts is subject to ACCA, a conviction on Count Four would carry a 15-year mandatory minimum, and a conviction on all counts would result in a 20-year minimum penalty.

    In December 2019, the government made its first discovery production and extended a plea offer to Mr. Pitts that would require him to plead guilty to Counts One and Three of the indictment, which would result in a mandatory minimum of 15 years' imprisonment. Mr. Pitts

2

made an application for a reduced plea, which would result in a minimum ten years, which the government rejected. The government continued producing discovery on March 12, 2020, May 19, 2020, October 15, 2020, October 26, 2020, and July 15, 2021. After the case was assigned to new counsel in our office, we renewed our request for an offer which would result in a ten-year minimum sentence. Again, the government rejected it.

On October 19, 2021, the Court set trial for January 10, 2022, and the following day, October 20, the government produced more discovery still. On November 29, we made a discovery demand for the visual and audio recordings depicting the alleged firearm possession charged in Counts Three and Four, which the government produced for the first time on December 3, 2021. On December 6, after we had the opportunity to view the video and discuss it with our client, we asked the government for a modified version of the initial plea offer. Specifically, we requested a plea to Counts One and Three, but with a stipulated sentence under Rule 11(c)(1)(C); alternatively, with a stipulated sentencing range under Rule 11(c)(1)(B); or, at a minimum, the ability to argue at sentencing for application of a reduced guidelines range. We also informed the government that should a modified offer not be extended, Mr. Pitts would be willing to accept the government's original plea offer.

We engaged in several rounds of negotiations, during which counsel for the government made no commitments regarding modifications to the offer, but also never indicated that the original offer was no longer available. On December 13, counsel for the government informed us that, based on her office's interpretation of policies put into place by the previous presidential administration, no plea offer would be extended and Mr. Pitts had to choose between pleading guilty to the indictment or proceeding to trial.

In order for Mr. Pitts to make this very difficult and sensitive decision, he needs to know what his statutory sentencing exposure would be if he were convicted on all counts. The answer to this, however, is far from clear because the parties have differing views about whether he is subject to ACCA. In particular, we disagree whether he "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e).

According to the criminal history that the government produced in discovery, Mr. Pitts was previously convicted of the following New York state offenses: third-degree possession of a narcotic drug with intent to distribute, in violation of N.Y.P.L. § 220.16(1); third-degree sale and attempted sale of a narcotic drug, in violation of N.Y.P.L. § 220.39(1); fifth-degree attempted criminal possession of a 500 milligrams or more of cocaine, in violation of N.Y.P.L. § 220.06(5); first-degree robbery, in violation of N.Y.P.L. § 160.15; and second-degree robbery, in violation of N.Y.P.L. § 160.10.[1] The two robbery convictions are violent felonies under 18 U.S.C.

---

[1] This is just a list of the different potential predicates he has been convicted of, not a chronological account of each time he was convicted. We have omitted the other arrests and dispositions that do not involve controlled substances or meet the criteria for violent felonies under 18 U.S.C. § 924(e).

*United States v. Pitts*, No. 19-cr-502 (LDH)
December 20, 2021

§ 924(e)(2)(B).[2] *See United States v. Ojeda*, 951 F.3d 66, 70-72 (2d Cir. 2020). Accordingly, to qualify for application of ACCA, one of the New York State controlled substance offenses would have to meet the elements of a "serious drug offense." That is, at least one would have to be "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. § 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." *Id.* § 924(e)(2)(A)(ii).

The parties disagree whether Mr. Pitts's prior New York State third-degree possession and sale offenses, under N.Y.P.L. §§ 220.16 and 220.39, categorically qualify as ACCA serious drug offenses.[3] *See generally Shular v. United States*, 140 S. Ct. 779, 783, 785 (2020) (holding that ACCA enhancement applies only if state crime's elements match "serious drug offense" definition). Defense counsel believes that these prior convictions are not statutory predicates, for two reasons.

*First*, New York's definition of prohibited cocaine is broader than the federal version. In October, Judge Koeltl ruled that a prior conviction for criminal sale of a controlled substance under N.Y.P.L. § 220.39 is not an ACCA serious drug offense because New York prohibits the sale of all cocaine isomers, while the federal prohibition only reaches particular cocaine isomers. Sentencing Tr., *United States v. Minter*, No. 20-cr-389 (JGK), at 7-8 (S.D.N.Y. Oct. 21, 2021); *see also United States v. Baez-Medina*, No. 20-cr-24 (JGK) (S.D.N.Y. July 1, 2021) (adopting same reasoning to reject guidelines "controlled substances offense" enhancement). That decision built upon the analyses of other judges, including Judge Garaufis, who reached the same conclusion while examining an immigration statute with similar language to ACCA. *See United States v. Fernandez-Taveras*, 511 F. Supp. 3d 367 (E.D.N.Y. 2021), *government appeal withdrawn* (2d Cir. Apr. 5, 2021); *United States v. Ferrer*, No. 20-cr-650 (NRB) (S.D.N.Y. July 21, 2021) (adopting same reasoning to reject guidelines "controlled substances offense" enhancement). Specifically, in *Fernandez-Taveras*, Judge Garaufis found that New York's definition of a "narcotic drug" — the type of controlled substance Mr. Pitts pled guilty to possessing and selling or attempting to sell under N.Y.P.L. §§ 220.16 & 220.39 — includes cocaine, which it defines as including "their salts, isomers, and salts of isomers." 511 F. Supp. 3d at 373 (quoting N.Y. Pub. Health Law § 3306). By contrast, the federal Controlled Substances Act only prohibits "optical and geometric isomer[s]" of cocaine, and not "positional" isomers. *Id.* (quoting 21 C.F.R. § 1300.01(b)). Notably, in that case, the government did not dispute the existence of this categorical mismatch or, it appears, the indivisibility of New York's "narcotic drug" definition. *Id.* at 372 n.4 & 374.[4]

---

[2] We note, however, that these robberies were committed approximately 40 years ago and, in the years since, Mr. Pitts has not committed similar crimes.

[3] Mr. Pitts's fifth-degree attempted criminal possession conviction is not a serious drug offense because it was a Class E felony with a maximum punishment of four years, less than the ten required by the statutory definition. *See* N.Y.P.L. §§ 220.06, 110.05(7), 70.00(2).

[4] The government did argue that New York's prohibition of all isomers should not have made a difference because there was no realistic probability that application of the New York and federal

4

*Second*, we maintain that New York's definition of "narcotic drug" is overbroad because it includes a substance, naloxegol, that is absent from the federal controlled substances schedule. This categorical mismatch has prompted trial judges in our circuit to hold that offenses like N.Y.P.L. §§ 220.16(1) & 220.39(1) are not drug offenses that trigger statutory or guidelines enhancements. *See, e.g.*, *United States v. Swinton*, 495 F. Supp. 3d 197 (W.D.N.Y. 2020) (concluding that defendant's N.Y.P.L. § 220.39(1) conviction was not controlled substance offense for purposes of career-offender guideline); *United States v. Gibson*, No. 19-cr-66 (LJV) (W.D.N.Y. Jan. 31, 2020) (same); *United States v. Augustine*, No. 17-cr-753 (CS) (S.D.N.Y. Sept. 19, 2019) (same); *United States v. Savinon*, No. 21-cr-233 (LJL) (S.D.N.Y. Sept. 22, 2021) (concluding that defendant's N.Y.P.L. § 220.16(1) conviction was not controlled substance offense for purposes of career-offender guideline); *United States v. Disla*, No. 20-cr-222 (AKH) (S.D.N.Y. Dec. 2, 2020) (concluding that defendant's N.Y.P.L. § 220.39(1) conviction was not controlled substance offense for firearm guidelines enhancement); *United States v. Butler*, No. 19-cr-177 (GBD) (S.D.N.Y. Feb. 12, 2020) (same); *United States v. Santana*, No. 18-cr-865 (VEC) (S.D.N.Y. Aug. 22, 2019) (same). Indeed, judges have found such third-degree offenses categorically overbroad even where, as here, the defendant was convicted before 2015, when naloxegol was removed from the federal controlled substances schedule. *See Swinton*, 495 F. Supp. 3d at 206-07, 209-10 (collecting cases and holding that it must compare the New York narcotic-drug definition with federal schedule in place at time of defendant's instant sentencing, and not schedule in place at time of prior conviction).

These are substantial arguments against the application of ACCA to Mr. Pitts. We ask that the parties be granted leave to litigate whether the statute's 15-year minimum applies to him, so that Mr. Pitts may make an informed decision about whether to plead guilty to the indictment or, as currently planned, proceed to trial. We respectfully request an adjournment to allow the parties this opportunity to have the Court's guidance on this issue, which may very well obviate the need for a trial at all.

---

statutes diverged in practice. *Id.* at 374. The court rejected that argument as misplaced, because "the 'realistic probability' test does not apply 'when the statutory language itself, rather than the application of legal imagination to that language, creates the realistic probability that a state would apply the statute to conduct beyond the generic definition.'" *Id.* (quoting *Hylton v. Sessions*, 897 F.3d 57, 63 (2d Cir. 2018)).

*United States v. Pitts*, No. 19-cr-502 (LDH)
December 20, 2021

  Accordingly, we ask that the Court adjourn the current January 10 trial date until after the Omicron spike in COVID-19 infections has passed, and with enough time for the parties to litigate, and the Court to decide, whether Mr. Pitts faces a 15-year mandatory minimum punishment on Count Four of the indictment.

                Respectfully submitted,

                 /s/
                Michelle Gelernt
                Benjamin Yaster
                (718) 330-1204
                *Counsel for Thomas Pitts*

cc:  all counsel of record (via ECF)